THE STATE v. RISELING, Appellant.

Division Two, February 21, 1905.

1. **ASSAULT WITH INTENT TO RAPE:** Information. An information which charges that defendant did unlawfully and feloniously make an assault upon a female child under the age of fourteen years, to-wit, of the age of twelve years, with intent then and there feloniously to unlawfully and carnally know and abuse her, is sufficient.

2. ——: Instruction. An instruction is proper which tells the jury that "the information charges, and the defendant is on trial for, an assault with intent to commit the crime of rape. And the word 'rape,' as used in these instructions, and as known in the law in such case made and provided, is defined as carnally and unlawfully knowing a female child under the age of fourteen years." This instruction properly defines rape as applicable to the charge in the information.

3. ——: Intent: Must Be Evidenced By Assault: Persuasion and Inducement: Instruction. The fact that the prosecutrix is under the age of consent and is incapable of consenting to carnal knowledge, does not dispense with the necessity of charging and proving an essential element of the offense, to-wit, the assault. The intent must be evidenced by an assault, that is, some physical force put in motion towards the female, even though such force be with her consent. And an instruction which tells the jury that the intent may be evidenced by persuasion or inducement is erroneous.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

REVERSED AND REMANDED.

*White, Clay & Sheppard* and *Gardner & Cameron* for appellant.

(1) The information does not charge any offense for the reason that it does not charge that the assault

was made forcibly and against the will of the prosecutrix. Smith v. State, 80 Am. Dec. 358; Harden v. State, 46 S. W. 807. (2) The intent with which the assault is committed must be the specific intent to rape, and the evidence must show the intent of defendant beyond a reasonable doubt. 23 Am. and Eng. Ency Law (2 Ed.), 865; State v. Owsley, 102 Mo. 678. Mere solicitation does not constitute an intent to rape. There is not sufficient evidence to prove the intent of defendant to commit an assault with the intent to rape, beyond a reasonable doubt, and proof of such intent must be beyond a reasonable doubt before defendant can be convicted. Dusey v. State, 108 Ga. 477; Hunter v. State, 29 Fla. 486; Curry v. State, 4 Tex. App. 574; State v. McCune, 16 Utah 170. (3) Instruction 2, given for the State, is misleading. It tells the jury that persuasion or inducement is all that is necessary to make a person guilty of assault with intent to rape. This is not the law. State v. White, 52 Mo. App. 285; State v. Owsley, 102 Mo. 678; State v. Priestly, 74 Mo. 24; Taylor v. State, 24 Tex. App. 299; Bishop, Statutory Crimes (3 Ed.), sec. 496; State v. Briggs, 93 Iowa 125; Murphy v. State, 120 Ind. 115; Elam v. State, 20 S. W. 710; State v. Harney, 101 Mo. 472; Smith v. State, 80 Am. Dec. 360.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State; *Cole, Burnett & Williams* of counsel.

(1) The information is sufficient. State v. Wray, 109 Mo. 594; State v. Meinhart, 73 Mo. 563; State v. Prather, 136 Mo. 20; People v. Lawrintz, 114 Cal. 628; People v. Verbergren, 106 Cal. 211; People v. Gordon, 70 Cal. 467; State v. Sargent, 32 Ore. 110; Campbell v. People, 34 Mich. 351; Hamen v. People, 19 Mich.

316; Stephen v. State, 11 Ga. 226; Fizell v. State, 24 Wis. 364; State v. Groseheim, 44 N. W. 541; Davis v. State, 47 N. W. 854; Hays v. People, 1 Hill 351.   (2) Instruction 2 simply advised the jury that if the defendant intended to have carnal knowledge of the prosecutrix by persuasion or inducement and with her consent, or with force against her consent, then he. was guilty of the crime denounced by the statute.   This, we think, is the law.

FOX, J.—At the April term, 1904, of the Jasper County Circuit Court, the prosecuting attorney of said court filed in said circuit court an information, duly verified, charging defendant with an assault with intent to carnally know and abuse, which is as follows:

"Comes now Andrew H. Redding, the prosecuting attorney within and for the county of Jasper and State of Missouri, and as such prosecuting attorney informs the court that Edward C. Riseling, on the sixteenth day of February, 1904, at the county of Jasper and State of Missouri, in and upon one Neta Fisher, a female child under the age of fourteen years, to-wit, of the age of twelve years, unlawfully and feloniously did make an assault, with intent, her, the said Neta Fisher, then and there feloniously to unlawfully and carnally know and abuse, against the peace and dignity of the State."

The testimony on the part of the State as detailed by the prosecuting witness is substantially as follows:

The defendant is a married man.   His family consisted of his wife and a little daughter, of the age of about four years.   Neta Fisher, the prosecutrix, was of about the age of twelve years at the time of the incident narrated in the record.   She lived with her father, mother and little sister.   The Fisher and Riseling families lived near each other and on adjoining lots. The relations of the families were cordial.   The familiarity of the families was probably due in a large

measure to the love of the children for each other, as the evidence shows Neta Fisher was almost constantly at the home of the defendant, and on the night of the unfortunate occurrences which are revealed here, the record shows that Neta Fisher was performing the role of 'little mother' to defendant's little child.

On the evening of February 16, 1904, the defendant was somewhat late in coming home; so late that his family had eaten supper, and his wife had gone to the Fisher's, and she and they, together with another neighbor, were playing cards. Neta Fisher, as was her custom, was at the defendant's home. Her sister Zella was also there, as was another young girl and the servant of the defendant. When defendant reached home he ascertained that his wife had eaten supper and was at the home of the Fisher family. He went there for a moment and then returned to his own home. His little visitors, who were awake, began to talk about going home. He suggested to his servant girl that she entertain them for awhile with the graphophone. But the servant did not know how to manipulate it and the defendant played a few pieces, eating his supper between times. Neta Fisher and defendant's little daughter had both fallen asleep and were lying upon a davenport, which was in the dining room. Other occurrences are best told in the language of Neta Fisher, who testified as follows:

"Q. Just tell the jury what you did and what occurred after you went? A. Well, when I went over there we sat around the stove awhile and Jennie Hudson told us stories, and the baby was sleepy, and she played around awhile and she wanted Jennie to undress her, and laid her on the davenport, and she wanted me to be her mother and play like I put her to sleep, and I said 'All right,' and laid down by her and she went to sleep, and I went to sleep with her, and the next I knew I was out on Mr. Riseling's back porch, and I was not wide awake; I just know the air struck

me and as I got further on out I was awake, and I looked up to see who it was. I saw Mr. Riseling and I wasn't scared because I didn't think he would hurt me, and when we got on out further I saw he was going to take me to the closet, and when we got there I put my feet up and pushed myself back, but he pushed me on in and he sat down; before that, on the way out there, I told him, when I first got wide awake, I didn't want to go out there, I wanted to go back in the house, but he kept saying, 'Hush,' and I said, 'Let me go.' I didn't scream very loud, I just said it, and when I saw he was going to take me clear in the closet and shut the door, I began to hollow loud, and he kept saying, 'Hush! hush!' and then he sat down and took me upon his lap and told me to kiss him, and I told him I wouldn't do it. I had on a dress that opened in the front, and he tried to get his hand in the front of my dress and he couldn't, and then he tried to get his hand under my dress, and put it down as far as my knee, and I put my hand down like that, and he couldn't get it up any further, and then when he put his hand on my knee I had a chance to use this arm; he had his other arm around me holding my arm, and I got up and opened the door, and he still had hold of my arm, and then I went on to the house, and he still had hold of me, and went into the kitchen and wiped out my eyes, and he went in the other room, and the rest of the folks came in the other room."

The testimony in behalf of the defendant is as follows:

"Neta Fisher, who had gone to sleep on the lounge in the dining-room, turned and rolled over and fell to the floor. He got up and walked over and raised her up and asked what was the matter and told her to wake up. She said, 'Oh, I am sick, I have got to go out.' He, as he stated, thought she had been in a warm room sleeping and her stomach was out of order and

he led her to the door.  As she stepped on the porch she kind of staggered.  He said 'Neta, wake up, are you asleep?'  She said nothing, but started off toward the closet.  He followed her at some distance and came to a little coal shed on the south side of the path about eighteen or twenty feet west of the closet.  She kind of reeled and defendant caught her, and she said, 'Let me go, I am all right, let me go.'  He turned her loose and she turned and took a few steps back toward the house and kind of stumbled like, defendant walked up a couple of steps quickly and took hold of her elbow and said, 'Neta, what's the matter with you, anyway?' wondering if the girl was in her sleep, but thinking something was wrong, said, 'Neta, what's the matter?' and she said, 'I am all right now, let me go, let me go, I am all right.'  She then walked back to the kitchen door about ten feet ahead of defendant.  In the meantime Zella Fisher went into the dining-room and finding Neta gone ran in to the Fisher house and, as stated by some of the witnesses said, 'Neta was gone and Mr. Riseling was gone and that he had taken her and killed her.'  The Fishers came out and began to call Neta loudly.  As Neta and defendant entered the dining-room door Mrs. Fisher came in to the front door very much excited and exclaimed, 'Ed Riseling, where have you had my daughter,' and, 'What have you done to her?'  Defendant stated to her what had happened, whereupon she said, 'Neta Fisher, tell your mother what he has done.'  Whereupon defendant said, 'Neta, tell your mother what I have done, or if I hurt you,' and Neta said, 'Mama, he hasn't hurt me or touched me, or done anything to me.'  She then said, 'Neta tell your mother, if God was your judge, tell your mother the truth.'  Defendant said, 'Tell your mother the truth or if I hurt you,' and she said, 'Mama, I have told you before, he hasn't hurt me or touched me.' "

At the conclusion of the evidence the court in-

structed the jury and the cause was submitted and they returned a verdict of guilty in the following form:

"We the jury find the defendant, Edward C. Riseling, guilty of an assault with intent to ravish Neta Fisher as charged in the information, and assess his punishment at imprisonment for two years in the penitentiary."

Defendant was sentenced in accordance with said verdict, and from this judgment an appeal was, in due time and form, prosecuted to this court, and the cause is now before us for consideration. The instructions complained of will be given attention during the course of the opinion.

## OPINION.

The sufficiency of the information in this cause is challenged on the ground that it fails to charge that the assault was made forcibly, and against the will of the prosecutrix; and it is also insisted that it charges no offense known to the laws of the State.

Upon the propositions involved in the contention of learned counsel for appellant, that this information does not sufficiently charge the offense, we will say that our investigation demonstrates a conflict of views upon this question by many courts of high standing. However, it can add nothing to legal literature to indulge in a discussion of the correctness or incorrectness of the conclusions reached by these courts. It must suffice to say that the proposition so ably presented by counsel is no longer an open question in this State; indictments charging the same offense, and in substantially the same form as the one before us in this information, has been in judgment before this court in the cases of State v. Meinhart, 73 Mo. 562; State v. Wray, 109 Mo. 594; and State v. Prather, 136 Mo. 20, and the ruling was uniform that the offense was properly charged and the indictment was held valid. We see no reason for departing from the conclusions in

those cases, hence the information in this case must be held sufficient.

It is insisted that the court by instruction numbered 1 erroneously defined rape. This instruction is as follows:

"The court instructs the jury that the information charges, and that the defendant is on trial for, an assault with intent to commit the crime of rape. And that the word rape, as used in these instructions, and as known in the law in such case made and provided, is defined as carnally and unlawfully knowing a female child under the age of fourteen years."

There was no error in this instruction; it properly defined *rape* as applicable to the charge in this case, and it conforms to section 1837, Revised Statutes 1899, in which the offense is defined.

While the defendant in this cause was only charged with an assault with intent to commit rape, it was appropriate for the court to advise the jury of the nature of the offense that defendant was charged with intending to commit.

Instruction numbered 2 is complained of, and it is insisted that this instruction was erroneous and misleading. It was as follows:

"The court instructs the jury that the intent necessary in the crime charged in the information, and for which defendant is on trial, is the intent to have carnal and unlawful knowledge of a female child under the age of fourteen years, either by persuasion, inducement, force or any other means adapted to the end of having said carnal and unlawful knowledge of said female child, and it matters not whether it was the intent of the defendant to have said carnal and unlawful knowledge with or without the consent of said female child, or with or without force."

This instruction is too broad and was clearly misleading. This instruction, so far as it tells the jury "that the intent necessary in the crime charged in the

information, and for which defendant is on trial, is the intent to have carnal and unlawful knowledge of a female child under the age of fourteen years'' is appropriate and properly declared the law. But when the court substantially tells the jury that if the defendant intended to have carnal and unlawful knowledge of the prosecutrix by persuasion or inducement or force, that was all that was necessary, it was error and does not properly declare the law applicable to the offense charged. The offense charged is an *"assault with the intent to commit rape"* and the intent necessary to constitute this offense must accompany the assault. In other words, the intent to commit the offense must be demonstrated by an assault and not by mere persuasion or inducement. The mere harboring of an intent to commit rape and nothing more does not constitute the crime. The essence and gist of the offense is the unlawful assault with the intent to commit it. [State v. Rider, 90 Mo. 54.]

The fact that the prosecutrix is under the age of consent, and is incapable of consenting to carnal knowledge does not dispense with the necessity of charging and proving one of the essential elements of the offense, that is, the assault. The term *assault*, as used in the statute, constituting an essential element of the offense charged in this case, must not be construed, as applicable to this particular class of cases, to mean anything different from the ordinary and well-recognized legal acceptation of the term. Mr. Bishop, in his recognized standard work on Crim. Law (8 Ed.), vol. 2, sec. 23, defines an assault as, "Any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being." As applicable to cases of the character now being considered, there must be some physical force put in motion, not that the prosecutrix, who is incapable of consenting, must resist such force or ob-

ject to it, but there must be such force in making the assault, together with other circumstances in the case, as will demonstrate the purpose and intent of the party charged to have carnal knowledge of the female under the age of consent. [Croomes v. State, 51 S. W. 924; see opinion for rehearing in this case, 53 S. W. 882, and cases cited.]

It was ruled in Murphy v. State, 120 Ind. 115, that there must be an assault by touching the body of the person of the female, and that case went to greatest length in holding that though the female was incapable of consenting to any familiarity with her person, still it must be proven, in order to authorize a conviction, that there was an assault, amounting at least to the touching of the person of the female.

An analysis of all the authorities upon this subject leads irresistibly to the conclusion that there must be an *assault*, that is, there must be some physical force force put in motion toward the female, even though such force be with her consent. In other words, the assault must be of that character indicative of the intent to commit the offense of unlawful carnal knowledge of a female incapable of consenting to the consummation of the act; hence, we repeat, that the instruction which tells the jury that the intent to commit the offense by persuasion or inducement is all that was necessary, was erroneous; it is essential that the intent to commit the offense must be evidenced by an assault; mere solicitation, persuasion or inducement to have sexual intercourse falls far short of an *assault* with the intent to commit *rape*. [State v. Priestley, 74 Mo. 24; State v. White, 52 Mo. App. 285; State v. Harney, 101 Mo. 470.]

The offense of an assault with intent to commit *rape*, and an attempt to commit the offense, are of a kindred nature, and the court in the trial of this cause so recognized them by instruction numbered 6, given for defendant, as follows:

"The court instructs the jury that the information charges the defendant with an assault with the intent to commit a rape on the presecuting witness, Neta Fisher, and it devolves upon the State to prove said offense of an attempt to commit a rape as charged in the information; and unless the jury believe from the evidence that said defendant assaulted said prosecuting witness with the specific intent to rape her, the jury will find defendant not guilty."

In the case of State v. Harney, supra, BRACE, J., speaking for the court, said:

"The only charge that can be evolved from the verbose reiterations of this indictment is, that the defendant, by verbal solicitations, tried to obtain the consent of a child of twelve years to have sexual intercourse, and failed. However despicable and deserving of punishment such conduct may be, it falls short of the criminal offense attempted to be charged, to constitute which there must be an actual attempt to have intercourse with such child. So long as the evil purpose dwells in contemplation only, it is beyond the grasp of these provisions of the law."

It is clear that, in order to constitute the offense charged, there must be an *assault,* and it is equally clear that the accomplishment of the act must be intended by the assault, and such intent must be shown by such assault and the attending circumstances.

Inducement or persuasion may be shown in connection with the assault for the purpose of indicating the intent in making the assault; but the intent, by inducement or persuasion, to commit the act, would not constitute the offense, and the trial court very properly recognized this fact in instruction numbered 3, where the jury are told that there must be an assault with the intent to carnally know the prosecutrix.

If the testimony of the prosecutrix is true, then such acts on the part of the defendant constitute an assault; hence, the importance of omitting from in-

State v. Riseling.

struction numbered 2 the misleading features as herein indicated.

The emphasis, in this discussion of the question involved, upon the necessity of an assault by some physical force, is not for the reason that the facts, as testified to by the prosecutrix in this cause, do not constitute an assault; but for the purpose of indicating the views of this court, that the terms "inducement or persuasion," as used in instruction numbered 2, were calculated to mislead the jury. The instruction should plainly advise the jury of the necessity of an assault and the intent necessary to constitute the offense charged, and that such intent may be found by the jury from the nature and character of assault made, together with the attending circumstances surrounding the parties at the time.

It is insisted that the remarks of Mr. Cole, special counsel employed on the part of the prosecutrix, constituted error. It is unnecessary to express an opinion upon that complaint; as the case must be retried, it will suffice to say that the counsel should be required to confine their remarks to the evidence introduced. The State is best represented when counsel keep strictly within the record.

This cause will be remanded to the end that both the State and the defendant may be enabled to develop all the facts surrounding this transaction. If the defendant *assaulted* this little girl with the intent to carnally and unlawfully know her, he richly deserves the punishment imposed; on the other hand, no greater injustice can be done the defendant, nor could he be more humiliated or a greater calamity befall him, than to be convicted of this offense if, in fact, he was not guilty.

We have given expression to our views in this cause upon the record before us, and for the reason indicated the judgment will be reversed and the cause remanded.

All concur.